IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

C/A NO.: _____

| | | |
|---|---|---|
| Candace Durham, Individually and as the Parent and Natural Guardian of J.C. and B.C. (minors), | ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** (Jury Trial Demanded) |
| vs. | ) ) | |
| Wal-Mart Stores, Inc., Wal-Mart Stores East, LP, and Wal-Mart Stores East, Inc. | ) ) ) | |
| Defendants. | ) ) ) | |

NOW INTO COURT, by and through undersigned counsel, comes Plaintiff, Candace Durham individually and as the natural guardian for her sons J.C. and B.C., minor children, who, in support of her claims against Defendant Wal-Mart Stores, Inc., Wal-Mart Stores East LP, and Wal-Mart Stores East, Inc. (collectively "Wal-Mart Defendants" or "Defendants") allege as follows:

## **INTRODUCTION**

1.      On or about October 24, 2021, a portable plastic gas can manufactured by Blitz U.S.A., Inc. and sold by Defendants exploded causing minors J.C. and B.C. to suffer severe burns which have caused significant bodily injury, caused the family to incur substantial medical expenses, and caused other recoverable damages.  This action is brought against the Defendants pursuant to the laws of the State of South Carolina to recoup all compensatory and punitive damages to which the Plaintiff is entitled because of the injuries suffered.

1

**PARTIES**

2.      Plaintiff Candace Durham is the mother and natural guardian for her sons J.C. and B.C. (minors) all of whom reside in Sumter County, South Carolina.

3.      Defendant Wal-Mart Stores, Inc. is a Delaware corporation engaged in business in South Carolina with its principal place of business in Bentonville, Arkansas. Defendant Wal-Mart Stores East, LP is a Delaware limited partnership engaged in business in South Carolina with its principal place of business in Bentonville, Arkansas.[1] Defendant Wal-Mart Stores East, Inc. is an Arkansas corporation engaged in business in South Carolina with its principal place of business in Bentonville, Arkansas. All three defendants (hereinafter collectively "Wal-Mart") may be served process through their registered agent C T Corporation System, 2 Office Park Court, Columbia, South Carolina 29223, Suite 103.

4.      Defendants have each purposefully availed themselves of the privilege of conducting business activities within the State of South Carolina by placing products, including the portable gasoline container at issue in this matter, into the stream of commerce and by advertising their products and/or establishing retail facilities within the state.

5.      Defendants derive substantial revenue from goods sold and used in the State of South Carolina.

6.      Defendants do reasonably expect, or should reasonably expect, that their business activities could or would have consequences within the State of South Carolina.

7.      Defendants have established continuous and systematic contacts with the State of South Carolina sufficient to confer general jurisdiction.

---

[1]Wal-Mart Stores East, LP, upon information and belief, is comprised of two partners; WSE Investments, LLC a Delaware limited liability company with a principal place of business outside South Carolina and WSE Management, a Delaware limited liability company with a principal place of business outside of South Carolina.

8.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim at issue occurred in whole or in part within this district and division. The explosion of the subject gasoline container and the sale of the subject gas can occurred within this division.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and there is diversity of citizenship between Plaintiff and Defendants.

## FACTUAL BACKGROUND

10.     The subject can had a self-venting spout which means that Defendants placed a the portable plastic gas can for sale in the stream of commerce ("subject gas can") and sold the subject gas can in approximately 2005 to J.C. and B.C.'s stepfather.  This sale occurred in Sumter, South Carolina.

11.     On or about October 24, 2021, J.C. and B.C. attempted to use fuel as an accelerant for a fire they were starting in a fire pit in their backyard.

12.     Witnesses, including Plaintiff Candace Durham, heard a loud explosion.

13.     The subject gas can was found next to the fire pit entirely melted as a result of the event.

14.     The loud explosion sound is consistent with only one scientific phenomena; a flash back explosion.

15.     A flash back explosion of a gas can occurs when gasoline vapors outside the gas can ignite and the flame flash back into the vapor trail inside the container, causing an internal combustion, rupture and spraying of ignited gasoline on the victim.

16.     The burn injuries suffered by J.C. and B.C. are consistent with a flashback and explosion of the subject gas can.

17.     The Wal-Mart Defendants sold The Subject Gas Can and in connection with that sale warranted that the Subject Gas Can was fit for ordinary purposes and not unreasonably dangerous.

18.     The Subject Gas Can was not modified or altered after it left Defendants' control, and J.C. and B.C. were utilizing the Subject Gas Can in an ordinary, foreseeable and reasonable manner in which the Subject Gas Can was reasonably expected to be used.

19.     Prior to the manufacture of the Subject Gas Can, Defendants were aware that gas can owners use the cans to pour gasoline in an attempt to start fires. Thus, the use of the Subject Gas Can by J.C. and B.C. was reasonably foreseeable.

20.     The Subject Gas Can was defective and unsafe for its intended purposes at the time it left the control of Defendants in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented the injuries and Plaintiffs' damages.

21.     Prior to the manufacturer of the Subject Gas Can, Defendants were aware that other manufacturers, including Eagle Manufacturing and Chilton, had chosen to incorporate flame arrestors into plastic gas cans. Thus, the incorporation of flame arrestors into plastic gas cans was technologically feasible.

22.     Defendants knew or should have known of the Subject Gas Can's susceptibility to flashback which occurs when gasoline vapors ignite and the flames chase the vapor trail back into the can, causing an explosion and/or spew of flames and burning gasoline.

23.     As a direct and proximate result of Defendants' acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the Subject Gas Can, which lacked a flame arrestor/flashback arrestor, J.C. and B.C. suffered severe personal injuries, including, but not limited to, severe burns, physical pain and impairment, physical disfigurement, and other recoverable damage.

## CAUSES OF ACTION

## COUNT 1: DESIGN DEFECT

24.     Plaintiffs incorporate all previous paragraphs.

25.     The Subject Gas Can marketed, distributed, and sold by Defendants was defective and/or unreasonably dangerous when sold.

26.     The Subject Gas Can designed, marketed, distributed, and sold by Defendants was the cause of Plaintiffs' injuries.

27.     All Defendants are engaged in the business of selling portable gas cans, including the Subject Gas Can, to consumers within the stream of commerce.

28.     Defendants expected the Subject Gas Can, so introduced and passed on in the course of trade, to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold.

29.     The Subject Gas Can was without substantial change in the condition from which it was originally sold by Defendants and unexpectedly failed under ordinary and foreseeable use.

30.     At the time the portable gas can left Defendants' control, and at all times complained of, safer alternative designs were available that would have eliminated the risk of

the Subject Gas Can exploding without substantially impairing the usefulness and intended purpose of the product.

31. The Subject Gas Can was unreasonably dangerous and defective in that its design and construction did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the present case.

32. A flame arrestor, sometimes called a flame-arresting screen, flash arrestor, or spark arrestor, is a small metal or plastic device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device often consists of either a perforated metal screen or a wire mesh screen.

33. The efficacy of flame arrestors has been known to the gasoline manufacturing industry for decades, and particularly the manufacturers of portable gas cans have been aware of their existence since before they were first placed in industrial gas cans in the 1920s and began being placed in consumer gas cans by at least 1978.

34. For more than a quarter century, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

35. Sometime prior to February 3, 2003, Defendants' lawyers hired Pinnacle Engineering, LLC to conduct testing on Rubbermaid spouts with plastic screens to see if those screens would act as flame arrestors.

36. Pinnacle, LLC issued a report to Defendants' lawyers that provides:

- The plastic screen functions as efficiently as a metal screen in preventing flashback beyond the screen. These findings are supported by the research conducted by Hazen

Research in Golden, Colorado. There, a Rubbermaid screen, of polymer construction, was tested, multiple times, to determine its efficiency at preventing flames from traveling beyond the screen. In each of these tests, the polymer screen inhibited the flame from travelling beyond the plastic screen. These findings are due to direct observations as displayed on the video tape (as recorded during the experiments).

- The polymer screen functioned equally as efficient in preventing the flame flash back whether pure gasoline or a gasoline/oil mixture was utilized with the test apparatus.

- The findings listed above were repeatable. Multiple tests were conducted in the December 5th experimental work, and in each instance, the polymer screen function as effectively as the metal screen.

- Positioning the polymer screen halfway into the tube or at the flame end of the glass tube made no difference in the results.

- When no screen (metal or plastic) was utilized, the flame front travelled the length of the tube and into the chamber of the apparatus.

37.    Based on the above findings that were reported to Wal-Mart's agents, Wal-Mart knew or should have known that a simple plastic mesh screen would prevent flames from travelling beyond the screen and would prevent flash back into a container.

38.    Based on the above findings that were reported to Wal-Mart's agents, Wal-Mart knew that in the absence of such screens flames could flash back into gasoline containers.

39.    Consequently, Defendants have known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails back inside the container causing it to explode and/or spew flames and burning gasoline).

40.     Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the Subject Gas Can far exceeded any utility and/or benefits associated with its design.

41.     Nevertheless, despite the wealth of available scientific knowledge, Defendants have made, and continue to make, a conscious decision to endanger the safety of consumers, users, and bystanders by refusing to sell gas cans which incorporate a well-known safety device, despite the fact that this safety device is economically and technologically feasible.

42.     As a direct and proximate result of one or more of Defendants' acts or omissions as described herein and as a direct and proximate result of the Subject Gas Can's defective design, J.C. and B.C. suffered severe burn injuries.

43.     As such, Defendants are liable pursuant to the provisions of South Carolina Defective Products Act, S.C. Code Ann. §15-73-10 *et. seq.*

## COUNT 2: NEGLIGENCE

44.     Plaintiffs incorporate all previous paragraphs.

45.     Defendants owed consumers and/or foreseeable users, including J.C. and B.C., the duty of reasonable care in their design, manufacture, assembly, marketing, distribution and sale of the Subject Gas Can.

46.     Defendants ignored and/or breached that duty by their following negligent acts and/or omissions:

A.  Failed to sell a reasonably safe portable gas can;

B.  Marketing, distributing, and selling a portable gas can that was defective;

C.  Placed into the stream of commerce a portable gas can that was defective in design;

D.  Placed into the stream of commerce a portable gas can that was unfit for its intended use;

E.  Placed into the stream of commerce a portable gas can likely to cause injury in its ordinary use;

F.  Placed into the stream of commerce a portable gas can that contained manufacturing defects;

G.  Failed to require that gas cans they sold include flame arrestors in the product design;

H.  Failed to properly test their portable gas can and prototypes thereof with flame arresting material;

I.  Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountered portable gas cans;

J.  Failed to actively seek information regarding incidents involving explosion and/or internal combustion of portable gas cans;

K.  Failed to follow Wal-Mart's own safety protocols when faced with an incident report;

L.  Ignored and/or failed to investigate scientific, technological and industry information and studies regarding the efficacy of flame arrestors;

M.  Ignored and/or failed to investigate other lawsuits and/or similar incidents involving similar claims and incidents in which consumers, users, children, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gas cans; and

N.  The subject gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with this design outweighed its utility.

47.     As an actual and proximate result of Defendants' negligent acts and/or omissions, the Subject Gas Can, that caused J.C. and B.C.'s injuries and Plaintiffs' damages, was placed into the stream of commerce in a defective and unreasonably dangerous condition.

48.     J.C. and B.C.'s injuries and the manner in which they occurred were reasonably foreseeable to Defendants, which had actual and/or constructive knowledge from within the industry, national publications, media reports and prior claims and lawsuits, that consumers, users, and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

49.     As a direct and proximate result of one or more of Defendants' negligent acts or omissions as described herein, J.C. and B.C. suffered severe burn injuries.

<u>**COUNT 3: BREACH OF WARRANTY**</u>

50.     Plaintiffs incorporate all previous paragraphs.

51.     Defendants, by and through the sale of their portable gas cans, impliedly warranted to the consumer and/or foreseeable users, such as J.C. and B.C., that the container was fit for its ordinary and foreseeable purposes.

52.     J.C. and B.C. made ordinary foreseeable use of the container in reliance on said warranties.

53.     Contrary to said warranties, the portable gas can was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

54.     Defendants breached the implied warranties by one or more of the following respects, among others:

   a.   Failure of the gas can itself and by improper marketing;

b. Failure to require that the gas can be equipped with a flame arrestor and/or other safety devices to make the gas can safe for its foreseeable environment;

c. The gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with its design outweighed its utility;

d. Defendants knew or should have known of feasible alternative designs that would have significantly reduced and/or eliminated the risk of flammable vapor ignition and failed to employ said design alternatives to make it for its foreseeable environment;

e. Defendants knew or should have known that consumers would use gas cans to store gasoline, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent flashback;

f. Failed to assure that the product design included a flame arrestor;

g. Failed to protect foreseeable users of the gas can from the dangers present in the use of such container, which dangers Defendants knew or should have known existed;

h. Failure to recall and/or repair the product;

i. Placed on the market a gas can which was unfit for its intended use; and

j. Placed on the market a gas can which was not safe for the ordinary purpose for which it was sold.

55.     As an actual proximate result of Defendants' breach of said warranties, the subject gas can was placed into the stream of commerce in a defective and unreasonably dangerous condition.

56.     J.C. and B.C.'s injuries and the manner in which they occurred were reasonably foreseeable to Defendants, which had actual and/or constructive knowledge from within the industry, national publications, media reports, and prior claims and lawsuits, that consumers, users, children and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

57.     As a direct and proximate result of said breaches of warranty, J.C. and B.C. suffered severe burn injuries and Plaintiffs suffered damages.

## CAUSATION AND DAMAGES

58.     Plaintiffs re-allege and incorporates in this section each and every preceding allegation as if fully pled herein.

59.     Defendants caused J.C. and B.C.'s significant injuries as a result of the negligence and other tortious conduct set forth herein.  Plaintiffs demand money damages consistent with South Carolina law for the harm inflicted by Defendants, including, but not limited to the following:

   i. Past cost of medical care;

   ii. Past and future loss of wages, entitlements, support and other recoverable economic losses;

   iii. Past and future emotional distress;

   iv. Past pain and suffering;

   v. Past and future hedonic damages; and

vi.   Such further damages as will be proven at the trial of the case.

60.     Defendants have exhibited such willful disregard and/or absence of due care and/or recklessness and/or gross negligence such that punitive damage are appropriate in this action.  Defendants' conduct includes refusing to incorporate a flame arrestor in the Subject Gas Can despite *inter alia* knowledge of the feasibility and relative inexpensive nature of such a device; the propensity of Blitz gas can users to use gas cans in a manner such as that used by J.C. and B.C.; the catastrophic injuries suffered by similarly situated users; and the fact that a flame arrestor would prevent injuries such as those suffered by J.C. and B.C.

**WHEREFORE,** Plaintiffs pray that they be awarded all compensatory and punitive damages due and owed, including attorney's fees and costs associated with the prosecution of this action, as allowed by South Carolina law, prejudgment interest and for such other and further relief as this Honorable Court deems just and proper.

***Signature on Following Page***

Respectfully submitted, this 11th day of February, 2022.

MORGAN LITIGATION GROUP, LLC

By:    s/Samuel Kirkpatrick Morgan

**Samuel Kirkpatrick Morgan , Jr**
Email: km@morganlitigation.com
**Charles Thomas Slaughter**
Email: chuck@morganlitigation.com
PO Box 1256
Lexington, SC 29071
803-359-6194
Fax: 803-957-4584

**Daniel S. Haltiwanger**
E-Mail: dan@richardsonthomas.com
**Brady R. Thomas**
E-Mail: brady@richardsonthomas.com
1513 Hampton Street, 1st Floor
Columbia, SC 29201
Telephone No.:  (803) 541-7838
Facsimile No.:  (803) 541-9625

**Terry Edward Richardson, Jr**
Richardson Thomas Haltiwanger Moore and Lewis LLC
1730 Jackson Street
Barnwell, SC 29812
803-541-7860
Fax: 803-541-9625
Email: terry@richardsonthomas.com

ATTORNEYS FOR THE PLAINTIFFS